**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.T., R.L., and I.C.**

**No. 21-0772** (Harrison County 20-JA-243, 20-JA-244, and 20-JA-245)

**MEMORANDUM DECISION**

Petitioner Mother M.L., by counsel Julie N. Garvin, appeals the Circuit Court of Harrison County's July 29, 2021, order terminating her parental rights to L.T., R.L., and I.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has a history of Child Protective Services ("CPS") interventions dating back to at least 2016 due to her issues with substance abuse, domestic violence, and inability to provide adequately for the children's needs. In 2016, the DHHR filed a child abuse and neglect petition against petitioner, alleging that she abused drugs in L.T.'s presence, left the child with an inappropriate caregiver, and engaged in domestic violence in the child's presence. Petitioner was adjudicated as an abusing parent, and the circuit court granted her a post-adjudicatory improvement period. Petitioner successfully completed her improvement period, and L.T. was reunified with her.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Although the DHHR received a few referrals regarding the family over the years, the instant petition was not filed until November of 2020. The DHHR alleged that petitioner subjected her children to unsanitary living conditions, domestic violence, and substance abuse. Specifically, the DHHR alleged that CPS received a referral after petitioner and K.C., one of the children's fathers, engaged in domestic violence. According to the referral, K.C. slapped petitioner and left the residence, and petitioner screamed at him that she needed her pain pills. The children were observed to be crying and screaming during the altercation and, at one point, K.C. attempted to grab I.C. and leave with her. K.C. also "stiff armed" petitioner, causing her to fall. Law enforcement officers responded to the home and arrested K.C.

CPS workers investigated the situation and learned that domestic violence between K.C. and petitioner had been ongoing for several months. The workers discovered that, in June of 2020, K.C. jumped up and down on petitioner, causing a broken rib and a dislocated shoulder, and that K.C. was arrested for domestic battery against petitioner in September of 2020 after causing a laceration to petitioner's head. K.C. also allegedly repeatedly kicked petitioner in the pelvic region on another occasion. Many of these instances of domestic violence occurred in the children's presence.

The CPS workers then spoke to petitioner, who appeared to be under the influence of drugs. The workers observed petitioner's home to be in poor condition, with trash and other random items littered throughout the home and only a small path to walk through. Petitioner claimed she did not know why law enforcement officers came to her home and that she and K.C. were only verbally arguing. When asked why petitioner had allowed K.C. back into the home after the September of 2020 incident, petitioner claimed she did not know he was not allowed back in the home. Petitioner denied any substance abuse and, during the course of the interview, became emotional, screamed, and cursed at the workers. Petitioner further claimed that she did not have time to obtain a domestic violence protective order ("DVPO") against K.C. CPS workers asked petitioner to submit to a drug screen, and the following day petitioner screened and tested positive for methamphetamine and amphetamine. In sum, the DHHR alleged that petitioner subjected the children to domestic violence, unsanitary living conditions, and a drug-endangered environment, thereby abusing and neglecting the children.

In January of 2021, the circuit court held an adjudicatory hearing. Petitioner failed to appear but was represented by counsel. The DHHR presented the testimony of two law enforcement officers, an employee of the Harrison County Board of Education, petitioner's landlord, and a CPS worker. At the conclusion of the hearing, the circuit court found that, in September of 2020, K.C. perpetrated domestic violence against petitioner in the children's presence. The circuit court noted that K.C. was arrested as a result of the domestic violence and that, pursuant to that criminal action, a bond restriction was placed upon K.C. that precluded him from having contact with petitioner. Nevertheless, K.C. and petitioner engaged in domestic violence in the home in November of 2020, and the children were, once again, present in the home and witnessed the altercation. Petitioner failed to seek a DVPO against K.C. Further, the circuit court found that petitioner was observed to be under the influence of drugs at the time of the November of 2020 domestic violence incident and tested positive for amphetamine and methamphetamine the day after the incident. The circuit court found that the home was in poor condition with trash piled such that only a narrow walkway was available. Lastly, the circuit court

found that petitioner failed to ensure that L.T. properly attended school and failed to attend to the child's special needs. Based on these findings, the circuit court adjudicated petitioner as a neglecting parent. In April of 2021, petitioner filed a motion for a post-adjudicatory improvement period.

The circuit court held an initial dispositional hearing in May of 2021. Petitioner testified that the children were removed because she and K.C. argued in front of the children. Petitioner denied that she and K.C. engaged in physical violence and further denied her substance abuse problem, claiming that she abused drugs only on the night the children were removed. Despite stating that she did not have a substance abuse problem, petitioner testified "if you guys recommend, I will go into a rehab facility. It doesn't matter to me." When asked what aspects of her parenting she needed to work on, petitioner stated that the only aspect she needed to work on was "not giving in all the time." Further, when confronted with her recent positive drug screens, petitioner denied abusing drugs. Nevertheless, petitioner requested a post-adjudicatory improvement period and noted that she was currently participating in services. Petitioner admitted that there was a period of time that she had not participated in services and that the services had been briefly closed for noncompliance. Petitioner also acknowledged that she missed her scheduled parental fitness evaluation and missed several drug screens. However, petitioner stated that she would comply with services in order to regain custody of her children. Following testimony, the circuit court continued the hearing.

The circuit court held the final dispositional hearing in June of 2021. The DHHR presented the expert testimony of Kenneth Lewis, the laboratory director of OpAns, a laboratory testing facility located in North Carolina. Mr. Lewis testified that he analyzed four blood spot samples collected from petitioner throughout April, May, and June of 2021, two of which showed evidence of low-level methamphetamine abuse. The other two tests showed evidence of methamphetamine use, but the levels were below the reporting cutoff and, thus, were treated as negative. Based on the levels of the two positive tests, Mr. Lewis testified that petitioner could have abused methamphetamine or could have tested positive for the substance due to secondhand smoke or by touching the substance. He further suggested that the typical levels of low-level habitual methamphetamine users were slightly higher than petitioner's levels. However, on cross-examination, Mr. Lewis explained that despite the low levels, petitioner either abused the substance or would have known of her secondhand exposure. He stated,

> [t]hat's a significant exposure such that, you know, it doesn't come off of clothes of somebody who is smoking methamphetamine . . . somewhere else, smoked it two hours ago, came home, and she came into contact with them. It doesn't come from that. It would be being in the presence particularly in a close environment . . . with someone who is . . . actively smoking it or coming in contact with the powder material.

Next, the DHHR presented the testimony of a service provider, who stated that petitioner mostly complied with parenting classes. However, the service provider closed out adult life skills classes as petitioner refused to identify deficits in that area. According to the service provider, petitioner did not want to obtain a job and informed the service provider that she would work only part-time if required by the DHHR. The service provider further testified that petitioner did not

3

have transportation and was living rent-free in a friend's home. The provider opined that petitioner could have benefited from adult life skills classes and needed to work on becoming independent in order to maintain stability for her children and meet their needs without relying on others, but that she was not willing to do so. According to the provider, while petitioner engaged in the parenting classes, she failed to acknowledge the incidents of physical violence leading to the petition's filing and characterized them as verbal arguments only. The provider opined that petitioner did not have any understanding of how her actions affected the children. Regarding substance abuse, the provider stated that petitioner never appeared intoxicated during their sessions but that she did present with sores all over her body, which could be indicative of substance abuse. Given petitioner's attitude and failure to acknowledge her actions, the provider stated that she had not observed legitimate progress and that the services were essentially ineffective.

A CPS worker testified that, although petitioner regularly attended supervised visits with the children, they were chaotic and frequently needed intervention from either DHHR workers or service providers. For example, the CPS worker told of the need to intervene and stop petitioner from aggressively yanking on L.T.'s arm out of frustration. The worker opined that petitioner had not made progress with the children. The worker also testified that petitioner failed to appear for her parental fitness evaluation, which had to be rescheduled, and that she missed twenty scheduled drug screens throughout the proceedings. In fact, the worker requested that petitioner submit to two screens the week prior to the hearing, and petitioner failed to do so. The worker testified that the DHHR recommended the termination of petitioner's parental rights based upon her failure to take responsibility for her actions, her continued denial that she engaged in domestic violence, and her continued drug use, as well as her prior CPS history.

By order entered on July 29, 2021, the circuit court found that petitioner missed twenty scheduled drug screens and of the screens she attended, four were positive for methamphetamine. The circuit court found that petitioner was discharged from services in February of 2021, although services were reinstated in April of 2021 and petitioner had attended all but two sessions since that time. The circuit court found that petitioner did not make any legitimate progress during her parenting classes and that her failure to acknowledge any parenting deficits presented a substantial barrier to making progress. The circuit court found that adult life skills classes were closed due to petitioner's belief that she did not have any deficits, and that petitioner was not interested in obtaining employment, transportation, or general independence. Further, petitioner denied abusing drugs and engaging in domestic violence. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's July 29, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]The respective fathers voluntarily relinquished their parental rights to the children. The permanency plan for the children is adoption by their foster family.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. According to petitioner, she demonstrated her entitlement to an improvement period by filing a written motion and establishing that she was willing to comply with services. Petitioner argues that she needs intensive rehabilitation and could have received such services through an improvement period. Further, she asserts she has a strong bond with the children. As such, petitioner claims that she should have been given the opportunity to participate in an improvement period. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have stated that a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, we find that the circuit court did not abuse its discretion in denying petitioner an improvement period. The record is clear that petitioner was offered services such as parenting and adult life skills classes, random drug screens, and supervised visitation but failed to show any progress. Testimony established that petitioner initially failed to comply with parenting and adult life skills classes such that they were closed for noncompliance. Once those services were re-established, the service provider again closed the adult life skills classes due to petitioner's refusal or inability to understand that she needed to implement any changes. Indeed, the service provider testified at the dispositional hearing that petitioner had no desire to seek independence for herself and was content to rely upon others for transportation and housing and did not want to gain employment. Further, while petitioner participated in parenting classes, petitioner made no legitimate progress in those services.

Moreover, petitioner failed to acknowledge the conditions of abuse and neglect or accept responsibility for her actions. At the dispositional hearing, petitioner denied that she and K.C. engaged in physical violence and characterized their encounters as verbal arguments. Petitioner also denied that she had a drug problem in the face of laboratory confirmations indicating that she tested positive for methamphetamine during the course of the case, and she missed twenty drug screens. This Court has previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Accordingly, given petitioner's failure to progress in services and her failure to acknowledge her drug abuse and domestic violence issues, we cannot find that the circuit court abused its discretion in denying petitioner an improvement period. Petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating her parental rights upon finding that termination was necessary for the children's welfare. Petitioner contends that the circuit court could have adequately protected the children from petitioner by imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5).[3] Under this disposition, petitioner would not be able to regain any rights to the children until she was able to successfully demonstrate that she no longer presented a danger to the children and possessed the ability to properly care for them. According to petitioner, this less restrictive disposition provides the same protection to the children, and the circuit court could have modified disposition at a later date if the permanency plan required adoption. As such, petitioner argues that termination of her parental rights was error.

However, we find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Although petitioner participated in some services, the overwhelming evidence demonstrates that she failed to adequately progress in those services or, ultimately, remedy the conditions of abuse and neglect. Petitioner showed no legitimate progress in her parenting classes and her adult life services classes were discontinued due to her lack of motivation to work towards independence. Moreover, petitioner denied that she had a substance abuse problem and missed twenty drug screens during the proceedings below. On at least two of

---

[3]West Virginia Code § 49-4-604(c)(5) provides as follows:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

the occasions that she submitted to screens, she tested positive for methamphetamine, and on two other occasions she tested positive but below the reporting cutoff. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Such findings are sufficient to support the termination of her parental rights. While petitioner argues that the circuit court should have imposed a less restrictive alternative to the termination of her parental rights, this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court terminating petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 29, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn